**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE,<br>*Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF PENNSYLVANIA, *et al.*,<br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 26-CV-3449 |

**MEMORANDUM**

**Pappert, J.** **September 10, 2026**

John Doe, proceeding by pseudonym, filed a *pro se* lawsuit against the University of Pennsylvania and nine of its professors and administrators after he was dismissed from the Graduate School of Education's doctoral program. Doe asserts a due process claim under 42 U.S.C. § 1983, a failure to accommodate claim under the Americans with Disabilities Act and the Rehabilitation Act, and state law claims for wrongful termination and breach of contract.[1]

[1] Doe's initial Complaint (Dkt. No. 2) and Amended Complaint (Dkt. No. 8) comprise a motion to proceed by pseudonym and a motion for a temporary restraining order, but leave blank the sections titled "Verified Complaint (Sworn Facts)." (*See* Am. Compl. at 47.) By initiating this action with motions and not a complaint, Doe has not complied with the Federal Rules of Civil Procedure 3, which states that "[a] civil action is commenced by filing *a complaint* with the court." (emphasis added). Despite this omission, for purposes of screening under § 1915, the Court liberally construed the entire pleading as Doe's Amended Complaint, which is the operative pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*). If Doe elects to file a second amended complaint, he must comply with the Federal Rules of Civil Procedure, including Rules 3, 8, and 10. To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief and "[e]ach averment must be 'simple, concise, and direct.'" *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) (*per curiam*) (quoting Fed. R. Civ. P. 8(d)(1)). Rule 10 requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary's Med. Ctr.*, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10).

The Court will grant Doe leave to proceed *in forma pauperis* and deny his motions to use the "John Doe" pseudonym and for a temporary restraining order or preliminary injunction. Upon statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), Doe's § 1983 claims, wrongful termination claims, and ADA and RA claims will be dismissed with prejudice, and his breach of contract claims will be dismissed without prejudice to amendment.[2]

I[3]

Doe was enrolled as a doctoral student at Penn's Graduate School of Education. (Am. Compl. at 19.) As part of his admission, he received a Dean's Fellowship and was appointed to serve as a research fellow for the calendar year September 1, 2025, through June 30, 2026. (Dkt. No. 9-1 at 17.) Doe received a stipend for this fellowship. (*Id.*) On December 18, 2025, Associate Professor Rand Quinn sent Doe a letter advising that, after a committee vote, he was academically dismissed from the doctoral program and residency. (Am. Compl. at 26; Dkt. No. 9-1 at 28-29.) The letter states that dismissal was based on "serious concerns" with his "progress as a Ph.D. student" at the end of the Spring 2025 semester and Doe's failure to make "meaningful academic progress," particularly with respect to his research apprenticeship, in the Fall 2025 semester. (Dkt. No. 9-1 at 28-29.)

---

[2] Based on the residency allegations in the Amended Complaint, it appears that the Court has diversity jurisdiction over Doe's state law claims.

[3] The factual allegations set forth in this Memorandum are taken from Doe's Amended Complaint (Dkt. No. 8) and the over 200 pages of exhibits he filed in support of the Amended Complaint. (Dkt. No. 9-1 (filed under seal).) The Court adopts the sequential pagination assigned to the Amended Complaint by the CM/ECF docketing system.

Doe states that Quinn dismissed him without hearing his "side of the story." (Am. Compl. at 28.) To appeal his dismissal, Doe initiated Steps 1 through 4 of the "GSE Student Academic Grievance Policy." (*Id.* at 20, 42, 44.) However, despite initiating the appeal process, Penn "proceeded with dismissal in violation of their own internal procedures." (*Id.* at 42.) On April 8, 2026, Leslie Levin, Vice Dean of Admissions and Student Affairs at Penn GSE, emailed Doe that "[a]s [she] articulated in both [her] 3/12/26 and 1/29/26 emails, the appropriate process for addressing [his] appeal is the Exceptions to the Academic Policies Process." (*Id.* at 44.) According to Doe, however, the "Exceptions to Academic Policies" process has one step and is "procedurally inappropriate for a dismissal based on research performance." (*Id.* at 43-44.) Doe states that he participated in the "Exceptions track under express protest" but believed that he could appeal his academic dismissal under the Grievance Policy track. (*Id.*)

Doe states that he suffers from "Major Depressive Disorder" and is "disabled." (*Id.* at 46, 53.) Doe also has a "learning disability/Neurodevelopmental Disorder" that he "formally registered with the Weingarten Center," Penn's Center for Academic Support and Disability Services, and for which he had been approved undisclosed accommodations.[4] (*Id.* at 24.) Doe claims that Penn failed to accommodate his disability by not permitting a meeting to occur over Zoom. (*Id.* at 22.) On February 16, 2026, Doe met in person with Director of Student Intervention Services Lauren Rudick. (*Id.*) Prior to the meeting, Rudick had emailed, "I am reaching out because I heard that

---

[4] Doe's Exhibits reveal that at least some accommodations involved "Classroom Accommodations/Note Taking/Access to recorded lectures," and "Testing Accommodations/Extended Time/100% more time for timed tests and quizzes." (Dkt. No. 9-1 at 35-36.) None appear to relate to his depression or other alleged mental health condition.

you are dealing with a very stressful academic situation." (*Id.*) Doe had requested that their meeting be held over Zoom "due to his condition," but Rudick allegedly denied the request. (*Id.* at 22-23; *see also* 9-1 at 33-34.) The email exchange, which is attached as an exhibit, reveals Doe's response to Rudick's request to meet: "Dear Ms. Lauren, Next Monday, February 16 at 4 pm is fine. Would Zoom be fine?" (*Id.* at 33.) Rudick responded to Doe's request to meet over Zoom: "Thank you, []. I'd like to meet you in person. Is it possible for you to come to my office?" (*Id.*) Doe responded: "Yes, that's fine. See you on Monday, February 16 at 4 pm in your office." (*Id.*) Doe alleges that he felt he "had no alternative but to attend in person to protect his academic standing." (*Id.* at 23.)

Two days after meeting with Rudick, Doe was formally diagnosed with MDD and prescribed medication. (*Id.*) Despite his MDD diagnosis postdating the alleged failure to accommodate, Doe claims that Penn nevertheless "had notice" of his disability based on communications he sent to GSE professors expressing that he was not feeling well. (*Id.* at 22.) On December 23, 2025, Doe stated to one professor by email that he was "very emotionally stressed out and feeling unwell." (*Id.*) And, on December 29, 2025, and January 29, 2026, he cancelled two Zoom meetings with professors because he was "not feeling well." (*Id.*)

Based on these allegations, Doe asserts due process claims under § 1983, failure to accommodate claims under the ADA and the RA, and state law claims for wrongful termination and breach of contract. In addition to the University of Pennsylvania, named as Defendants are Katherine Strunk, Rand Quinn, Susan A. Yoon, Ericka S. Weathers, Seiji Isotani, Jonathan Supovitz, Michael A. Gottfried, Lauren Rudick, and

Leslie M. Levin. Doe asks the Court to enjoin Defendants from (1) terminating his enrollment, (2) "revoking [his] academic access, computing privileges, or university email," (3) "placing a notation of dismissal" on his transcript, and (4) removing him from "any sponsored research role or stipend." (*Id.* at 48 (proposed order).)

II

Doe is entitled to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Doe is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III

### A

Doe asserts a failure to accommodate claim under the ADA and the RA based on allegations that Rudick denied his request to attend their February 16, 2026 meeting over Zoom rather than in person.[5] (Am. Compl. at 21-24.) Because these statutes are similar, Courts construe RA and ADA claims together. *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018); *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). To state a discrimination claim under the ADA or the RA, a plaintiff must allege that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted). The discrimination element encompasses claims that an employer failed to make reasonable accommodations for the plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To meet the pleading standard, claims of unlawful discrimination must be supported by "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element," *i.e.*, that the plaintiff was discriminated against in violation of the law. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted). Under the ADA, a plaintiff is disabled if she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of

[5] The Court assumes that Doe's ADA claim falls under Title I of the statute, which prohibits employment discrimination. *See Contee v. Univ. of Pennsylvania*, No. 21-1398, 2021 WL 2661459, at *2-3 (E.D. Pa. June 29, 2021) (evaluating ADA Title I claim against Penn by student terminated from graduate program).

such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman*, 961 F.3d at 245 (citing 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Individuals are not subject to liability in their personal capacities under the ADA or the RA. *See Emerson v. Thiel College*, 296 F.3d 184, 189-90 (3d Cir. 2002) (*per curiam*); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 169-70 (3d Cir. 2015). Accordingly, the Court will dismiss with prejudice all ADA and RA claims Doe asserts against the individual defendants. The Court will also dismiss Doe's ADA and RA claims against Penn because he has failed to plausibly allege a disability discrimination claim based on a failure to accommodate. While a request for accommodation does not have to be formal or include the magic words "reasonable accommodation," it must be clear that the employee is requesting assistance for their disability. *Taylor*, 184 F.3d at 313. "In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.* Penn could not have been aware that Doe suffered from MDD when Rudick requested that she and Doe meet in person because Doe was diagnosed two days after they met. Moreover, Doe's email to Rudick simply requested to meet over Zoom and did not, contrary to his assertion, make the request "due to his condition." (Am. Compl. at 22-23; *see also* Dkt. No. 9-1 at 33-34.) When Rudick expressed a preference to meet in person, Doe again did not state that he preferred Zoom on account of any disability but rather simply responded, "that's fine." (Dkt. No. 9-1 at 33.)

Moreover, Doe's claim that Penn "had notice" of his disability based on emails he sent to professors stating that he was "emotionally stressed" or "feeling unwell" (Am. Compl. at 22) does not render the claim plausible. Although constructive notice may, under certain circumstances, be imputed to an employer, the ADA does not require an employer to "speculate as to the extent of" an employee's disability or his need for an accommodation "simply because it was aware that he was ill." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 435–36 (E.D. Pa. 2023) (citation modified). Doe's representations that he was stressed or unwell were not notice of any disability, and his allegations do not support a plausible inference that Rudick or Penn knew or should have known that his request to meet over Zoom was due to MDD or any other alleged disability. And, in light of Doe's exhibits, leave to amend would be futile. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (explaining that if a plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control").

B

Doe asserts due process claims based on allegations that despite his invoking Steps 1 through 4 of the GSE Academic Grievance Policy, Penn proceeded with academic dismissal. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a

threshold issue; there is no liability under § 1983 for those not acting under color of law.”).

Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is “such a ‘close nexus between the State and the challenged action’ that seemingly private behavior ‘may be fairly treated as that of the State itself.’” *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass’n*, 531 U.S. 288, 295 (2001)). The Third Circuit has articulated three tests to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.” *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks, alteration, and citation omitted); *see also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019).

Doe alleges that although Penn is “not a government body in the constitutional sense, [it] receives substantial federal funding.” (Am. Compl. at 19 (emphasis omitted).) However, governmental funding—“no matter how great those contributions may be”—does not render a private institution a state actor for purpose of § 1983. *See Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 102 (3d Cir. 1984); *see also Klavan v. Crozer-Chester Med. Ctr.*, 60 F. Supp. 2d 436, 443 (E.D. Pa. 1999) (“[D]efendants’ receipt of government funding, even if combined with [extensive regulation], does not render defendants state actors, regardless of which test we employ.”). Doe has not sufficiently alleged that Penn

or the individual Penn professors and administrators named as Defendants are state actors subject to liability under § 1983. Other courts have reached the same conclusion about Penn and its employees. *See, e.g.*, *Fakhreddine v. Univ. of Pennsylvania*, No. 24-1034, 2025 WL 345089, at *6 (E.D. Pa. Jan. 30, 2025) (concluding that plaintiff failed to establish that University of Pennsylvania was a state actor); *Elansari v. Univ. of Pennsylvania*, No. 19-786, 2019 WL 13423763, at *2 (E.D. Pa. Mar. 5, 2019) (dismissing § 1983 claims against University of Pennsylvania and Penn professor); *Pik v. Univ. of Pennsylvania*, No. 08-5164, 2010 WL 3933275, at *5-7 (E.D. Pa. Oct. 7, 2010) (concluding that Penn is not a state actor even though it accepts financial assistance from the state); *Karakozova v. Trs. of Univ. of Pennsylvania*, No. 09-02564, 2011 WL 1754468, at *5 (E.D. Pa. May 9, 2011) (entering judgment in favor of defendants on § 1983 claim because "[t]he University of Pennsylvania is a private institution whose actions are not fairly attributable to the state and cannot be sued under section 1983." (citation and internal quotation marks omitted)); *Chyatte v. Univ. of Pennsylvania*, No. 90-5198, 1990 WL 126084, at *1 (E.D. Pa. Aug. 28, 1990).

C

Generally, there is no common law cause of action against an employer who terminates their at-will employee in Pennsylvania. *Weaver v. Harpster*, 975 A.2d 555, 559 (Pa. 2009) ("[A]bsent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason."). However, in limited circumstances, an employee may assert a wrongful termination claim when the termination "implicates a clear mandate of public policy." *Id.* at 563. Pennsylvania courts have applied this exception in few cases, such as when an employee was

terminated for filing a worker's compensation claim, *see Shick v. Shirey*, 604, 716 A.2d 1231, 1238 (Pa. 1998), for seeking unemployment benefits, *see Highhouse v. Avery Transp.*, 660 A.2d 1374, 1378 (Pa. Super. Ct. 1995), for refusing to submit to a polygraph test, *see Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628, 634 (Pa. Super. Ct. 1993), or for serving on jury duty, *see Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121 (1978).

To support his wrongful termination claim, Doe describes various complaints about his performance made by two research apprentices, and provides reasons why he believes those complaints were unfounded. (*See* Dkt. 9-1 at 34-42.) Doe alleges that complaints about his timely completion of timesheets and preparations for meetings were unsubstantiated, that the professor "was not telling the whole story" (*id*. at 36), and that he did not agree to do certain tasks requested by his second apprentice professor (*id*. at 40-42). Doe also alleges that Quinn sent the termination letter without hearing Doe's "side of the story." (*Id*. at 39.) Doe's allegations, at best, support an inference that he disagrees with the reasons he was academically dismissed. None of these allegations support a plausible inference that Doe's termination violated clear public policy. Moreover, to the extent that Doe claims that his dismissal violated public policy because it involved disability discrimination, such a claim is preempted by the ADA. *See Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 65 (3d Cir. 2020) (*per curiam*).

D

Doe's breach of contract claim against Penn is based on allegations that Penn continued with dismissal proceedings despite Doe invoking Steps 1 through 4 of the

Grievance Policy. Pennsylvania permits students to sue a private university for breach of contract but only when the allegations "relate to a specific and identifiable promise that the school failed to honor." *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) (*per curiam*) (quoting *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The terms of the contract can be found in "the guidelines, policies, and procedures contained in written materials provided to students over the course of their enrollment." *Id.* (citing *Swartley*, 734 A.2d at 919). To state a plausible breach of contact claim, Doe must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

Doe has not asserted a plausible breach of contract claim. Doe states that he initiated Steps 1 through 4 to appeal his dismissal under the Academic Grievance Policy, but that Defendants continued with the dismissal process "in violation of their own procedures." (Am. Compl. at 42-44.) Doe does not point to specific obligations that Penn undertook in the Academic Grievance Policy, the Exceptions process, or any other document, or how they allegedly breached those obligations. Instead, he vaguely references Defendants violating their "own procedures," without specifically articulating what procedures were violated and identifying the source of those procedures. Moreover, Doe's citation to exhibits (*see id.* (referring to "doc 47" and "doc 61")) without articulating what the exhibits are and how they support his claim is not sufficient to plead a plausible claim. *See Bressi v. Northumberland Cnty., Child. & Youth Servs.*, No. 23-2156, 2023 WL 8866573, at *2 (3d Cir. Dec. 22, 2023) (*per curiam*) ("[A] District Court is not obligated to discern claims from exhibits attached to a

complaint.”).

In any event, Exhibits 47 and 61 do not clarify the basis of any breach of contract claim. Exhibit 47 is an email exchange between Doe and the Vice Dean of Admissions and Student Affairs Leslie Levin concerning Doe’s appeal of his academic dismissal. Doe writes to Levin that he is initiating Step 3 of the “GSE Student Academic Grievance Policy” and attaches his appeal letter and supporting documents. (Dkt. No. 9-1 at 11-12.) Levin responds that, pursuant to two prior emails, “the appropriate process for addressing your appeal is the Exceptions to Academic Policies process,” and that the “Committee on Degree will review this matter and issue a final decision.” (*Id.* at 11.) Exhibit 61 is a copy of the GSE Student Handbook (*id.* at 37-52), which contains a section titled the “GSE Student Academic Grievance Policy” (*id.* at 48) and a separate section titled “Exceptions to Academic Policies” (*id.* at 52). The Academic Grievance Policy provides that “[a] GSE student who wishes to register a grievance on the evaluation of the student’s academic work (For example, the appealing of a grade) or an academic matter related to the program or a course should discuss the situation with the faculty members first” and if the student is not satisfied, then they can discuss the situation with three other academic leaders within GSE. (*Id.* at 48.) The Exceptions to Academic Policies provides that “GSE’s Committee on Degrees considers petitions from students seeking exceptions to the School’s academic policies or procedures.” (*Id.* at 52.)

Doe has not alleged why Penn had a duty to proceed under one appellate policy over the other or the source of that alleged duty. Nor has Doe explained how he suffered damages as a result of any alleged breach. Accordingly, Doe has not alleged a

plausible breach of contract claim. Doe may amend his breach of contract if he can assert additional allegations to cure these defects.

E

Federal Rule of Civil Procedure 10(a) requires plaintiffs to identify the parties by their real names in the complaint. Fed. R. Civ. P. 10(a). Generally, using pseudonyms "runs afoul of the public's common law right of access to judicial proceedings." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (citation omitted). Litigants in federal court may only proceed anonymously in "exceptional cases" and upon a showing of "(1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* (internal quotations omitted). Once this showing is made, "district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process." *Id*. The Third Circuit has identified a non-exhaustive list of factors that are relevant to this balancing. Factors favoring anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to [her] refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467-68 (E.D. Pa. 1997)). Factors that disfavor anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the

> opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 467-68).

Doe filed this case using the pseudonym "John Doe" and wants to proceed anonymously due to his "sensitive and private mental health condition" and the risks that "stress of public disclosure" would exacerbate symptoms of his MDD. (Am. Compl. at 4.) Doe has not sufficiently alleged that he "has a reasonable fear of severe harm from litigating without a pseudonym." *Id*. at 408. He does not articulate how disclosure of his identity would cause *severe* harm, other than vaguely alleging that it would be "uncomfortable," cause "social stigma," or exacerbate symptoms of his depression, such as sleep disruption and muscle pain. (Am. Compl. at 4, 5, 12.) Risk of embarrassment or harm to Doe's reputation is not a basis for anonymity. *Doe v. Coll. of New Jersey*, 997 F.3d 489, 496 n.6 (3d Cir. 2021). Doe's generalized and speculative claims of future mental or emotional harm are not sufficient to overcome the public's strong interest in open judicial proceedings. *See, e.g.*, *Doe v. Simons*, No. 25-1371, 2026 WL 2178789, at *1-2 (W.D. Pa. July 29, 2026) (denying employment discrimination plaintiff's motion to proceed by pseudonym where "heightened mental illness symptoms and stigma" did not amount to reasonable fear of severe harm); *Doe v. Hillsborough Twp. Bd. of Educ.*, No. 23-22597, 2024 WL 4028293, at *7-9 (D.N.J. Aug. 30, 2024) (concluding that plaintiff's fear that disclosure of his identity would exacerbate anxiety, depression, and mental health issues was "speculative" and not reasonable).

Nor is Doe's fear of alleged harm reasonable under the circumstances of his case. Defendants are already aware of Doe's identity and his diagnosis. And, with the dismissal of his ADA and RA claims, Doe's mental health is no longer an issue in this

lawsuit. If Doe chooses to file a second amended complaint, it will be limited to his breach of contract claims, which in no way concern his MDD diagnosis, medical history, or mental health in general. Moreover, to alleviate any concerns about public access to Doe's "sensitive psychiatric history" (Am. Compl. at 4), the Court will continue to seal Doe's redacted and unredacted exhibits.[6]

Even if Doe had met his initial burden to show that he faces a reasonable fear of severe harm, consideration of the *Megless* factors does not support permitting him to proceed anonymously. Regarding the six *Megless* factors favoring anonymity, the first factor is neutral. Although Doe has made efforts to keep his MDD diagnosis confidential by filing exhibits under seal, his identity is well known to Defendants and numerous other Penn professors and administrators, as demonstrated by his exhibits. The second factor weighs against anonymity. As noted above, the bases upon which he purportedly fears disclosure are not reasonable under the circumstances. The third factor also weighs against anonymity. This factor requires the Court to ask, "if this litigant is forced to reveal his [ ] name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" *Megless*, 654 F.3d at 410. Numerous publicly filed federal lawsuits involving ADA, RA and other statutory claims involve plaintiffs' medical and mental health history. The fourth factor also weighs against anonymity. The issues in Doe's case are not "purely legal" and thus do not weaken the public interest in knowing his identity. The fifth factor is neutral. Doe has not stated whether he would forgo litigating his case if required to

[6] Doe's unredacted exhibits have already been filed under seal. (Dkt. No. 9.) Out of an abundance of caution, the Court will also place Doe's redacted exhibits at Dkt. No. 2-1 under seal.

proceed using his real name. The sixth factor favors anonymity, as there is no evidence that Doe has illegitimate ulterior motives to proceed anonymously.

The three *Megless* factors disfavoring anonymity also support denying Doe's use of a pseudonym. The first factor weighs against anonymity. The Third Circuit has "acknowledge[d] the thumb on the scale that is the universal interest in favor of open judicial proceedings." *Megless*, 654 F.3d at 411. The second factor slightly favors anonymity because Doe is a private individual and there is no strong public interest in claims related to academic dismissals. The third factor is not applicable because the case is still in the screening phase under 28 U.S.C. § 1915(e)(2)(B)(ii), and thus no other parties are involved to oppose anonymity.

For these reasons, the Court denies Doe's motion to proceed using the "John Doe" pseudonym. If Doe chooses to file a second amended complaint, he must include his legal name in the filing. The Court will then amend the caption accordingly.

F

Doe requests a temporary restraining order or preliminary injunction to prevent Defendants from, among other things, terminating his enrollment. A plaintiff seeking a temporary restraining order or other preliminary injunctive relief must demonstrate that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019); *see also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."). Because all of

Doe's claims have been dismissed, he cannot at this time establish a likelihood of success on any of their merits.

IV

For the foregoing reasons, the Court will grant Doe leave to proceed *in forma pauperis*, deny his motions to use the "John Doe" pseudonym and for a temporary restraining order or preliminary injunction, and dismiss his Amended Complaint, in part with prejudice and in part without prejudice. Doe's § 1983 claims, wrongful termination claims, and ADA and RA claims will be dismissed with prejudice, as amendment would be futile. Doe's breach of contract claims will be dismissed without prejudice. Doe may file a second amended complaint if he can cure the defects the Court noted as to his breach of contract claims. An Order follows with additional instructions as to amendment.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**