**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JOHN DOE, Plaintiff,**

**v.** **CIVIL ACTION NO. 26-CV-3449**

**Katharine O. Strunk, Rand Quinn, Susan A. Yoon, Ericka S. Weathers, Seiji Isotani, Jonathan A. Supovitz, Michael A. Gottfried, Lauren Rudick, and Leslie M. Levin, Defendants.**

PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER LOCAL CIVIL RULE 7.1(g) AND FEDERAL RULE OF CIVIL PROCEDURE 54(B) TO MODIFY DISMISSAL OF STATUTORY DISABILITY CLAIMS FROM WITH PREJUDICE TO WITHOUT PREJUDICE

Plaintiff John Doe, proceeding pro se, respectfully moves this Court pursuant to Local Civil Rule 7.1(g) of the Eastern District of Pennsylvania and Federal Rule of Civil Procedure 54(b) for partial reconsideration of the Court's Memorandum and Order dated September 10, 2026. Reconsideration is necessary to prevent a **manifest injustice** resulting from a severe, documented medical incapacitation that occurred during the initial and amended drafting period of the complaint that was submitted to the court.

Specifically, Plaintiff respectfully requests that the Court reconsider and modify solely that portion of its Order dismissing Plaintiff's claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") with prejudice, and instead grant leave to re-plead these statutory failure-to-accommodate claims without prejudice in the upcoming Second Amended Complaint. In support thereof, Plaintiff averts as follows:

I. PROCEDURAL POSTURE AND JURISDICTION

1. On September 10, 2026, this Court entered an Order resolving Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, ordering in relevant part that:

a. Claims asserted under 42 U.S.C. § 1983, wrongful termination, and claims under the ADA and Rehabilitation Act are DISMISSED WITH PREJUDICE; and

b. Breach of contract claims are DISMISSED WITHOUT PREJUDICE, granting Plaintiff leave to file a Second Amended Complaint within thirty (30) days.

2. This Motion is timely filed within fourteen (14) days of the entry of the Court's September 10, 2026 Order, pursuant to Local Civil Rule 7.1(g).

3. Defendants have not yet been served with formal process, have not entered an appearance, and will suffer no legal prejudice by the relief requested herein.

## II. STANDARD OF REVIEW

4. A court may grant a motion for reconsideration where the moving party demonstrates: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

5. Furthermore, interlocutory orders that adjudicate fewer than all claims remain within the inherent discretionary power of the district court and may be modified at any time prior to final judgment under Fed. R. Civ. P. 54(b) "as justice requires."

6. Pro se pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).

7. Under established Third Circuit policy, district courts must liberally permit amendment in civil rights and remedial actions unless an amendment would be inequitable or futile. Phillips v. County of Allegheny, 516 F.3d 224, 236 (3d Cir. 2008); Foman v. Davis, 371 U.S. 178, 182 (1962).

## III. GROUNDS FOR RECONSIDERATION: PREVENTING MANIFEST INJUSTICE

8. Reconsideration is warranted solely to prevent manifest injustice arising from Plaintiff's pro se status and acute cognitive dysfunction caused by severe Major Depressive Disorder ("MDD").

9a. As substantiated in Plaintiff's prior filings and supporting medical exhibits (see Docket Entry of August 31, 2026), Plaintiff suffers from severe, debilitating MDD that severely impairs executive functioning, memory, and cognitive organization.

9b. On February 18, 2026, a NYU doctor diagnosed the Plaintiff with MDD, and wrote on the medical document, "Marked stress related to family and academic issues" and "Difficulty concentrating on coursework" under "Psychological stress and mood disturbance." See Exhibit A3. On February 18, 2026, a NYU doctor "Prescribed duloxetine 30 mg daily."

9c. On July 7, 2026, according to Plaintiff's CVS medical document, Plaintiff's dose of duloxetine was increased from 30 mg daily to 40 mg daily due to difficulty concentrating (see Exhibit A4).

10. In Plaintiff's prior pleadings, Plaintiff set forth concrete, contemporaneous factual allegations demonstrating that Plaintiff requested reasonable academic accommodations and deadline modifications from University leadership due to acute MDD, supported by verified medical documentation, which were summarily rejected (see Exhibit A5).

10b) A failure-to-accommodate claim requires: (1) the plaintiff is disabled, (2) the defendant had notice, (3) the accommodation requested was reasonable, and (4) the defendant failed to accommodate. In Plaintiff's amended complaint that was filed in June 2026, it said, "On March 10, 2026, Plaintiff's father wrote to Leslie M. Levin, Vice Dean of Admissions and Student Affairs at Penn GSE, "We request an extension to April 15, 2026, for any response deadlines due to [my son]'s recent diagnosis with Major Depressive Disorder on February 18, 2026. Medical documentation is attached" (see Exhibit A2).

"However, Leslie M. Levin, Vice Dean of Admissions and Student Affairs at Penn GSE wrote on March 12, "Unfortunately, we cannot accommodate your request for an extension to submit your petition to the Committee on Degrees. Our Committee has had their meeting date scheduled for quite some time, and this meeting will occur at the end of this month. Thus, we will need to adhere to the March 15, 2026 (by 11:59 pm) deadline as has been communicated to you." (see Exhibit A5).

10c) Plaintiff points directly to these March 2026 emails stated above 10 b. Plaintiff argues that by dismissing the disability claims with prejudice, there would be manifest injustice because the record shows a prima facie violation of the ADA and RA: Plaintiff **requested a reasonable accommodation for a documented mental health disability, and Penn GSE summarily denied it for mere administrative convenience.**

10d) Plaintiff asks the judge to reconsider the "with prejudice" status and change it to **"without prejudice."** Plaintiff requests the court that while Plaintiff's original complaint may have mislabeled these facts under a "due process" heading, the facts themselves prove a highly viable disability claim.

11. Operating without legal counsel and under acute psychiatric distress, Plaintiff committed an inadvertent pleading defect by mischaracterizing and organizing these core disability accommodation facts under constitutional "Due Process" theory rather than properly framing them under the ADA and Rehabilitation Act framework.

12. Dismissing the ADA and Rehabilitation Act claims with prejudice permanently extinguishes meritorious remedial statutory rights without an opportunity to cure a pro se formal drafting defect, resulting in manifest injustice.

13. Amendment is not futile. The existing factual narrative demonstrates a prima facie failure-to-accommodate claim: (a) Plaintiff is an individual with a recognized disability; (b) the University was on notice of the disability; (c) Plaintiff requested a reasonable accommodation/extension; and (d) the accommodation was refused without an interactive process.

14. Modifying the dismissal of the ADA and RA claims from "with prejudice" to "without prejudice" serves the interests of justice and comports with Third Circuit principles favoring disposition on the merits rather than technical pleading traps.

15. **Element (a): Recognized Disability**

- **Legal Standard:** Under 42 U.S.C. § 12102(1) and 29 U.S.C. § 705(20)(B), a disability is a physical or mental impairment that substantially limits one or more major life activities, explicitly including "learning, reading, concentrating, thinking, [and] communicating."
- **Application:** Clinical diagnosis of severe Major Depressive Disorder (MDD) established by a physician on February 18, 2026, with contemporaneous clinical documentation noting marked stress, cognitive executive dysfunction, and severe difficulty concentrating on academic coursework (treated with duloxetine). (Exhibit A3). Under the ADA Amendments Act (ADAAA), clinical depression substantially impairing concentration, thinking, and learning readily qualifies as a recognized statutory disability.

**Element (b): Timely Notice to the Institution**

- **Legal Standard:** The entity must have actual notice of the disability and the need for accommodation.
- **Application:** On March 10, 2026, written notice was transmitted directly to Leslie M. Levin, Vice Dean of Admissions and Student Affairs, explicitly disclosing the recent February 18, 2026 MDD diagnosis and attaching supporting medical documentation. This provided the university with unambiguous, contemporaneous notice of both the clinical impairment and its academic impact.

**Element (c): Request for a Plausible, Reasonable Accommodation**

- **Legal Standard:** The requested modification must be reasonable on its face and tied to the limitations caused by the disability, rather than a fundamental alteration of the program.
- **Application:** The March 10, 2026 request sought a discrete, one-month extension (from March 15 to April 15, 2026) to prepare and submit an administrative appeal petition to the Committee on Degrees. Short procedural deadline extensions to submit academic appeal materials are recognized as standard, facially reasonable modifications that do not compromise academic integrity or alter essential program requirements.

**Element (d): Failure to Accommodate and Absence of an Interactive Process**

- **Legal Standard:** Once an accommodation is requested, the covered entity must engage in a good-faith interactive process to evaluate the request and explore feasible alternatives; a blanket refusal based solely on administrative convenience violates the statute.
- **Application:** On March 12, 2026, the Vice Dean summarily rejected the extension solely because the Committee on Degrees already had an internal meeting scheduled for late March ("Our Committee has had their meeting date scheduled for quite some time... Thus, we will need to adhere to the March 15... deadline"). The university made no inquiry into the medical documentation, offered no alternative timeline, and engaged in zero interactive dialogue, arbitrarily exalting internal committee scheduling over a documented medical accommodation request.

16. Plaintiff requests the court that while Plaintiff's original complaint may have mislabeled these facts under a "due process" heading, the facts themselves prove a highly viable disability claim that an appointed lawyer should be allowed to properly format. During the week of September 28, the Plaintiff is planning to file an appointment of attorney from the court following Tabron Threshold and requesting 60 days extension of second amended complaint.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. GRANT Plaintiff's Motion for Reconsideration under Local Rule 7.1(g);
2. VACATE solely that portion of the September 10, 2026 Order designating the dismissal of the ADA and Rehabilitation Act claims as "with prejudice";
3. RE-ENTER dismissal of the ADA and Rehabilitation Act claims as WITHOUT PREJUDICE; and
4. PERMIT Plaintiff to include refined failure-to-accommodate claims under the ADA and Rehabilitation Act in the Second Amended Complaint.

Dated: September 24, 2026 Respectfully submitted,

John Doe, Pro Se

Acknowledgement: I utilized Google Gemini to expand legal terms, expand my legal ideas further, and structure this document.

A1

Outlook

**Dear Ms. Leslie Levin: I attached the letter dated March 10 regarding "GSE Student Academic Grievance Policy," an extension, and "production of all information submitted by the Education Policy program."**

**From** [redacted] <davex@upenn.edu>
**Date** Tue 3/10/2026 4:51 PM
**To** Levin, Leslie M. <lelevin@upenn.edu>
**Cc** Sukho Lyo <sukholyo1111@gmail.com>

2 attachments (367 KB)

3_10 two policies 4_41 pm March spring SEND NOW TO LESLIE.docx.pdf; NYU Langone Health MyChart - Past Visit Details sally kwa medical record (1).pdf;

Dear Ms. Leslie Levin:

I attached the letter dated March 10 regarding "GSE Student Academic Grievance Policy," an extension, and "production of all information submitted by the Education Policy program."

Sincerely yours,

[redacted]

A2

Dear Ms. Leslie Levin:

I am listed as an authorized individual under the student's FERPA consent. I am also the power of attorney for my son, [redacted]. I am [redacted]'s father, (Gregory) Sukho Lyo.

I am responding to Ms. Leslie's email on January 31, 2026, January 29, 2026, and March 10, 2026. The week of February 2 and the week of February 16, I received chemotherapy for my cancer treatment so I have been in a lot of pain so I am responding now. Also, On February 18, 2026, my son, [redacted] was diagnosed with Major Depressive Disorder with somatic symptoms and stress-related muscle pain directly linked to the University's recent actions. He has been prescribed daily medication (Duloxetine) and muscle relaxants.

In December 2025 and January 2026, the Ombuds at Upenn confirmed twice that the GSE Student Academic Grievance Policy is the correct venue for my son.

In December 2025 and January 2026, my son recalled that the Ombuds confirmed this (GSE Student Academic Grievance Policy ) was a primary path and that to preserve his standing and to properly exhaust all administrative remedies at the University level, he must proceed through the four-step Grievance process.

**I need to follow up** regarding "GSE Student Academic Grievance Policy." According to "GSE Student Academic Grievance Policy", it says,
"A GSE student who wishes to register a grievance on the evaluation of the student's academic work (for example, the appealing of a grade) or an academic matter related to the program or a course should discuss the situation with the faculty member first. If not satisfied, then the student should follow the order below in elevating the issue."
Source:https://onepenn.gse.upenn.edu/student-success/policies/academic-policies#grading_policies

Most importantly, if the "GSE Student Academic Grievance Policy" only meant coursework, it would say "coursework." By adding "academic matter related to the program" in the "GSE

Student Academic Grievance Policy," the policy encompasses the entire ecosystem of a student's degree progress. Therefore, my son's case should be considered in "GSE Student Academic Grievance Policy."

Also, we are requesting the 4-step Grievance process. "GSE Student Academic Grievance Policy" has 4 steps at Penn GSE so this policy gives my son more opportunity to stay in the Ph.D. program and earn the Ph.D. degree, while "Exceptions to Academic Policies" has one step at Penn GSE. When my son signed "Formal Response and Reservation of Rights" on January 29, 2026, and sent this to your office, under section 4 in "Formal Response and Reservation of Rights," it said, "His objective remains unchanged: to complete the Ph.D. program and earn a Ph.D. degree at Penn GSE."

My son maintains that the "Exceptions" track is procedurally inappropriate for a dismissal based on research performance.

We participate in the Exceptions track under express protest and without waiving our right to pursue the Grievance Policy track.

We request an extension to April 15, 2026, for any response deadlines due to [redacted]'s recent diagnosis with Major Depressive Disorder on February 18, 2026. Medical documentation is attached.

A2

We reserve the right to challenge any outcome of the 'Exceptions' meeting that bypasses the protections of the GSE Student Academic Grievance Policy.

We formally request production of all information submitted by the Education Policy program by March 12, 2026, to ensure adequate time for review and response.

Voluntary participating in this administrative procedure does not waive any rights that my son has to proceed against the University of Pennsylvania, Penn GSE, or any affiliated or responsible individuals, in the court of law.

Sincerely yours,

(Gregory) Sukho Lyo

Father of and power of attorney for [redacted]

March 10, 2026

Sign by [redacted]:

[redacted]

I have reviewed the positions and arguments outlined by my father in this letter, acting pursuant to my Power of Attorney and FERPA authorization. I expressly adopt and ratify his statements and arguments as my own, and submit them as my official appeal in this matter.

March 10, 2026

A3

# Telemedicine - Feb 18, 2026

with Sally H Kwa, MD at NYU Langone Ambulatory Care West Side

## Shared Notes

Progress Notes by Sally H Kwa, MD at 2/18/2026 3:15 PM

**Telemedicine Visit**

Other Participants Present: None

I obtained patient consent and agreement for this video encounter.

I obtained informed verbal consent from the patient for the use of AI ambient documentation during this encounter and I have reviewed, edited and finalized the documentation upon signing.

Additionally, I reviewed with the patient and addressed all questions regarding their disposition plan and follow-up instructions including any pertinent findings. The patient has acknowledged understanding of this information. I informed the patient a copy of their after-visit summary for this visit is available for them to refer to within the NYU Langone Health App and MyChart website.

**Subjective:**

**Chief Complaint**

Patient presents with

- Follow Up

History of Present Illness

[redacted] is a 37 year old male who presents with upper back muscle pain and stress related to family and academic issues.

Upper back muscle pain
- Significant upper back muscle pain began after his father was diagnosed with cancer in August
- Pain is linked to increased psychological stress
- Pain worsened following his father's cancellation of cancer treatments twice in October and after termination from his graduate program in December
- Bodily tightness contributes to poor concentration

Psychological stress and mood disturbance
- Marked stress related to family and academic issues
- Sadness and shock due to father's uncertain health and academic loss

A3

- Difficulty concentrating on coursework
- Reduced appetite and decreased exercise
- no si/hi
- looking to find a psych at Columbia but the wait time is 3+ months

Insomnia
- Marked insomnia with periods of lying in bed for 12 hours unable to sleep
- Recently slept only 2 hours after being awake for 34 hours

Medication use
- Does not take regular medications other than occasional vitamin D
- Has never taken medications for mood or anxiety

Past Medical History

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Allergy<br>*cats, oak tree* | |
| • Eczema | |
| • Elevated hemoglobin A1c<br>*5.7% (6/2019)* | |
| • Fatty liver | |
| • Gallbladder polyp | |

Medications

No outpatient medications have been marked as taking for the 2/18/26 encounter (Telemedicine) with Sally H Kwa, MD.

Allergy

No Known Allergies

REVIEW OF SYSTEMS
As above

**Objective:**

**PATIENT FACILITATED PHYSICAL EXAM**

General: No apparent distress, nontoxic appearing
Head: Normocephalic, atraumatic

A3

Eyes: no scleral icterus
Neck: FROM, Trachea midline
Respiratory: no distress
Extremities: Full range of motion
Skin: normal color
Neuro: alert, without focal deficits
Psych: normal mood and affect; appropriate relation with provider via camera

**Assessment/Plan:**

**Assessment & Plan**

**Major depressive disorder with somatic symptoms**

Significant stress and sadness due to father's cancer and termination from school. Muscle pain likely stress-related. Chose duloxetine for mood and pain. Muscle relaxant considered for tension relief.

- Prescribed duloxetine 30 mg daily.
- Prescribed muscle relaxant as needed, cautioning drowsiness.
- Advised symptom monitoring and reporting via MyChart by early March.
- Discussed potential duloxetine dose adjustment based on response.
- Emphasized patience with medication onset.

Referral for in-person evaluation? To wait for psychologist consultation

MyChart® licensed from Epic Systems Corporation© 1999 - 2026

# Financial Summary

[redacted] $63.74

A4

Your Total Rx Spend:
**$63.74**

[redacted]

**TOTAL $63.74**

**METHOCARBAMOL 500 MG TABLET**
RX# **3435843** QTY 30 - day LAST FILLED 07/12/2026 YOUR COST 1.12

**Last filled on July 12, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.12 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.12 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**LORATADINE 10 MG TABLET**
RX# **1903867** QTY 30 - day LAST FILLED 07/12/2026 YOUR COST 1.43

**Last filled on July 12, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.43 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.43 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**POLYETHYLENE GLYCOL 3350 POWD**
RX# **3435841** QTY 238 - day LAST FILLED 07/12/2026 YOUR COST 12.99

**Last filled on July 12, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $12.99 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $12.99 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**BISACODYL EC 5 MG TABLET**
RX# **1908697** QTY 2 - day LAST FILLED 07/09/2026 YOUR COST 14.99

**Last filled on July 9, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $14.99 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $14.99 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

A4

**HYDROCORTISONE 2.5% RECTAL CRM**

RX# **1908398** QTY 30 - day LAST FILLED 07/08/2026 YOUR COST 4.86

**Last filled on July 8, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $4.86 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $4.86 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**DULOXETINE HCL DR 40 MG CAP**

RX# **1904238** QTY 30 - day LAST FILLED 07/07/2026 YOUR COST 19.15

**Last filled on July 7, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $19.15 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $19.15 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**DULOXETINE HCL DR 30 MG CAP**

RX# **0999304** QTY 30 - day LAST FILLED 05/19/2026 YOUR COST 1.74

**Last filled on May 19, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.74 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.74 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**DULOXETINE HCL DR 30 MG CAP**

RX# **0999304** QTY 30 - day LAST FILLED 04/21/2026 YOUR COST 1.74

**Last filled on April 21, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.74 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.74 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**DULOXETINE HCL DR 30 MG CAP**

RX# **0999304** QTY 30 - day LAST FILLED 03/25/2026 YOUR COST 1.74

**Last filled on March 25, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.74 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.74 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

A4

**METHOCARBAMOL 500 MG TABLET**

RX# **1008419** QTY 30 - day LAST FILLED 03/25/2026 YOUR COST 1.12

**Last filled on March 25, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.12 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.12 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**DULOXETINE HCL DR 30 MG CAP**

RX# **0999304** QTY 30 - day LAST FILLED 02/19/2026 YOUR COST 1.74

**Last filled on February 19, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.74 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.74 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

**METHOCARBAMOL 500 MG TABLET**

RX# **0999305** QTY 30 - day LAST FILLED 02/19/2026 YOUR COST 1.12

**Last filled on February 19, 2026**

| | | | | | |
|---|---|---|---|---|---|
| TOTAL Rx COST | $1.12 | YOUR PLAN(S) PAID | $0.00 | YOU PAID | $1.12 |
| FULFILLED BY | **CVS Pharmacy®** | PRIMARY PLAN PAID | $0.00 | AMOUNT APPLIED TO DEDUCTIBLE | $0.00 |
| | | MANUFACTURER DISCOUNT | $0.00 | | |

This report may not reflect all medicines dispensed during the specified period.

Costs displayed may not reflect coverage from any supplemental insurance plans.

Other adjustments may include supplemental insurance coverage, manufacturer coupons or other discounts.

.

A5

Outlook

**RE: Dear Ms. Leslie Levin: I attached the letter dated March 10 regarding "GSE Student Academic Grievance Policy," an extension, and "production of all information submitted by the Education Policy program."**

**From** Levin, Leslie M. <lelevin@upenn.edu>
**Date** Thu 3/12/2026 2:27 PM
**To** [redacted] <davex@upenn.edu>
**Cc** Quinn, Rand <raq@upenn.edu>; Strunk, Katharine <kstrunk@upenn.edu>; Sukho Lyo <sukholyo1111@gmail.com>

1 attachment (277 KB)
Email response 1-29-26.pdf;

Dear [redacted]

I am writing to acknowledge receipt of the emails I received from both you and your father on Tuesday, March 10th, 2026.

Given the nature of the concerns that were expressed in yesterday's email, I have referred this matter to the University's Office of Equal Opportunity Programs. Please note that this Office is responsible for, among other things, investigating and assisting in the resolution of allegations of discrimination in violation of University Policy. These matters are not handled at the individual school level. I am sorry to hear of the difficulties you are experiencing, and want to remind you that the Student Health and Counseling Center is available to support you.

To ensure that we are responding appropriately to your concerns, Penn GSE and the University have asked that I serve as the point person for communications related to this matter. This allows us to provide consistent and timely responses back to you. This is standard practice at the University and is followed whenever a student presents specific concerns and has sent these concerns to various offices across the University.

Related to your concerns about which policy will be followed to address your appeal, I ask you to refer to the attached email sent to you on January 29, 2026. This email, as well as several prior emails, conveys the appropriate process to address your appeal.

Unfortunately, we cannot accommodate your request for an extension to submit your petition to the Committee on Degrees. Our Committee has had their meeting date scheduled for quite some time, and this meeting will occur at the end of this month. Thus, we will need to adhere to the March 15, 2026 (by 11:59 pm) deadline as has been communicated to you.

Finally, we will be happy to share with you the documentation that will be sent to the Committee on Degrees from the program once we are in receipt of your formal petition. A student petition is what initiates the process of the program gathering documentation. To be clear, the order of information sharing for an appeal is as follows: (1) student submits the petition; (2) the petition is shared with the committee; (3) the school submits their response and all relevant documents; and (4) all parties (school and student) are provided with all documents that will be sent to the committee and all parties are able to supplement their document submission until the committee meets shortly after the deadline of March 15th. Once we receive your petition, we will share our documentation within one business day.

A5

Sincerely,
Leslie M. Levin
--
**Leslie M. Levin**
Vice Dean of Admissions and Student Affairs
Graduate School of Education
University of Pennsylvania
3700 Walnut Street
Philadelphia, PA 19104
215-898-1501
(she/her)

---

**From:** [redacted] <davex@upenn.edu>
**Sent:** Tuesday, March 10, 2026 4:52 PM
**To:** Levin, Leslie M. <lelevin@upenn.edu>
**Cc:** Sukho Lyo <sukholyo1111@gmail.com>
**Subject:** Dear Ms. Leslie Levin: I attached the letter dated March 10 regarding “GSE Student Academic Grievance Policy,” an extension, and "production of all information submitted by the Education Policy program."

Dear Ms. Leslie Levin:

I attached the letter dated March 10 regarding “GSE Student Academic Grievance Policy,” an extension, and "production of all information submitted by the Education Policy program."

Sincerely yours,

[redacted]